(744 P.2d 865)

No. 60,273

DORIS MILLER, *Appellant,* v. BOARD OF EDUCATION, UNIFIED SCHOOL DISTRICT NO. 470, COWLEY COUNTY, KANSAS, *Appellee.*

Opinion filed October 22, 1987.

*David M. Schauner* and *Sally H. Rogers,* of Topeka, for the appellant.

*Donald Hickman,* of Hickman & Mills, of Arkansas City, for the appellee.

Before ABBOTT, C.J., DAVIS and SIX, JJ.

ABBOTT, C.J.: Doris Miller, a nontenured teacher, appeals from summary judgment entered in favor of the Board of Education, Unified School District No. 470, (U.S.D. 470) in a breach of contract action for nonrenewal of her teaching contract.

The decision of the trial judge in this case is thorough and well reasoned, and reflects a great deal of thought. Basically, he holds that statutes providing for the termination without reason of a nontenured teacher prevents the enforcement of a negotiated agreement which clearly provides a different scheme.

The question presented on appeal is one of law: Whether a school board may, by a collectively negotiated contract, restrict its right to terminate a nontenured teacher.

## Statutory Rights

At the heart of this question is the legislative intent reflected in the applicable statutes. Four acts control the formation, continuation, and termination or nonrenewal of teacher contracts: the Continuing Contract Law, K.S.A. 72-5410 *et seq.*; the Professional Negotiations Act, 72-5413 *et seq.*; the Due Process Procedure and Contract Termination Act, 72-5436 *et seq.*; and the Evaluation of Certificated Personnel Act, 72-9001 *et seq.*

The purpose of the Continuing Contract Law is to eliminate uncertainty and possible controversy regarding the future status of a teacher and a school concerning the teacher's continued employment. *Krahl v. Unified School District*, 212 Kan. 146, Syl. ¶ 2, 509 P.2d 1146 (1973).

The Evaluation of Certificated Personnel Act mandates specific evaluation procedure for all teachers. The legislative intent for the act "is to provide for a systematic method for improvement of school personnel in their jobs and to improve the educational system of this state." K.S.A. 72-9001.

The act, in pertinent part, requires:

"Every board shall adopt a written policy of personnel evaluation procedure in accordance with this act and file the same with the state board. Every policy so adopted shall:

. . . .

"(b) Include evaluation procedures applicable to all employees.

"(c) Provide that all evaluations are to be made in writing . . . .

"(d) (1) *Provide that every employee in the first two consecutive school years of employment shall be evaluated at least one time per semester by not later than the 60th school day of the semester* . . . ." K.S.A. 72-9003. (Emphasis added.)

The act also provides:

"(f) The contract of any person subject to evaluation shall not be nonrenewed *on the basis of incompetence* unless an evaluation of such person has been made prior to notice of nonrenewal of the contract and unless the evaluation is in substantial compliance with the board's policy of personnel evaluation procedure as filed with the state board in accordance with the provisions of K.S.A. 72-9003, and the amendments thereof." K.S.A. 72-9004. (Emphasis added.)

Two statutes *in pari materia* should be read together and harmonized, if possible, so that they both may have effect. *City of Overland Park v. Nikias*, 209 Kan. 643, 646, 498 P.2d 56 (1972). Thus, courts read 72-9004(f) narrowly to mean that, while

school districts must evaluate *all* teachers, they must show cause for nonrenewal only of *tenured* teachers. *Burk v. Unified School Dist. No. 329, Wabaunsee Cty.,* 646 F. Supp. 1557, 1563 (D. Kan. 1986). To do otherwise "would totally obliterate the distinctions carefully drawn by the Kansas Legislature in providing for different procedures for renewal of tenured · versus nontenured teachers and principals." *Burk,* 646 F. Supp. at 1561.

In *Burk,* the court held that the purpose of the Evaluation of Certificated Personnel Act—to improve school personnel in their jobs—does not extend to nontenured, nonrenewed teachers, because they will not remain in the school district's system. 646 F. Supp. at 1563.

In a case involving a nontenured teacher and a simple decision not to renew, we held that no property right was involved and no hearing was required. *Gragg v. U.S.D. No. 287,* 6 Kan. App. 2d 152, 156, 627 P.2d 335 (1981). Our Supreme Court has held that "[t]enured teachers cannot be dismissed for arbitrary reasons . . . ." *Gillett v. U.S.D. No. 276,* 227 Kan. 71, 77-78, 605 P.2d 105 (1980). Nontenured teachers do not enjoy that protection. "As to a simple decision not to renew a nontenured teacher's contract, made at the end of the school year, the courts have held that no hearing need be provided, neither before the decision not to renew, nor after it." *Crane v. Mitchell County U.S.D. No. 273,* 7 Kan. App. 2d 430, 433-34, 643 P.2d 1125, *reversed on other grounds* 232 Kan. 51, 652 P.2d 205 (1982). See *Arneson v. Board of Education, U.S.D. 236,* 8 Kan. App. 2d 178, 179, 652 P.2d 1157 (1982), *rev. denied* 232 Kan. 875 (1983).

In the present case, plaintiff was a nontenured teacher employed by U.S.D. 470 for only two consecutive years. U.S.D. 470 gave her notice of intent to nonrenew on April 4, 1986, within the notice requirements of K.S.A. 72-5411 and K.S.A. 72-5437. Unless plaintiff's statutory rights were expanded by a valid contract, she has no cause of action.

### Contractual Rights

Plaintiff contends that Article XI of the negotiated Master Agreement and, by incorporation, the evaluation procedure for certified personnel provide her with a shield against arbitrary nonrenewal. Defendant responds that if U.S.D. 470 increased the rights of nontenured teachers beyond statutory require-

ments, it acted *ultra vires*, and the contractual provision is void.

Article XI of the negotiated Master Agreement reads as follows:

"All Faculty members will be evaluated each school year. Teachers in their first and second years of employment in USD 470 will be evaluated twice each year; the first evaluation to be completed by the 60th day of instruction of first semester and the second to be completed by the 60th day of instruction of the second semester. Teachers in subsequent years of employment with the district (third year or more) will be evaluated at least once, not later than February 15th of each year.

"An evaluation shall be based upon *at least* one formal visitation of the teacher's classroom by his or her building principal or designated evaluator. A formal visitation of each year will be with prior notice. The specific day of the formal visitation will be designated and pre-conference shall be held between the evaluator and evaluatee to allow for the discussion of class plans and objectives. At the pre-conference, a Form 1 shall be completed. Subsequent formal or informal visitations may be at the discreation [sic] of the evaluator on an announced or unannounced basis. A pre-conference is not required after the first formal visitation.

"A post-visitation conference must be held between the evaluator and evaluatee within three (3) working days after each formal visitation. During a post-visitation and [sic] conference, the evaluator will discuss the data collected during the visitation and the evaluatee will be presented with a copy of the observation data sheet, form 2, or Form 4. *Any evaluation area in which the performance of the evaluatee was considered by the evaluator to be unsatisfactory will be noted on a Form 3. Such notice will place the evaluatee on a Plan of Assistance. Any information gathered during informal visitations that has a bearing on an unsatisfactory judgement [sic] must be documented and presented to the evaluatee at the next observation conference or sooner.* The formal evaluation instrument, Form 4, will be completed by the evaluator in time to comply with the deadlines designated in paragraph one. Prior to a conference being held to discuss the results of the formal evaluation, the evaluatee will be given the opportunity for self-evaluation, by judging their own performance on a Form 4. The evaluatee has the right to make written response to any comments made by the evaluator during the conference. Any response must be turned in to the evaluator within two weeks after the conference so that it can be attached to the evaluation. All evaluations will be retained in the Personnel Office for three years."

The plan of assistance program is also set out in detail in the agreement.

Plaintiff had five evaluations during her employment with U.S.D. 470. The evaluation form has four boxes for each evaluation area. The boxes are labeled "Meets or Exceeds Acceptable Standards," "Needs Improvement," "Unsatisfactory," and "Not

Applicable." Plaintiff did not receive an "Unsatisfactory" rating on any evaluation area on any of the evaluation reports. She did receive comments as to how she might improve in certain areas, but certainly nothing that would give any indication that her work was unsatisfactory, or that her job was in jeopardy.

Although the trial judge specifically declined to decide the case on whether an "Unsatisfactory" rating is necessary to trigger the negotiated contract provision in question, we believe we would be justified in affirming the trial court on that basis. In any event, the trial court did not err for the following reasons.

School districts are creations of the state legislature. " 'A school district has only such power and authority as is granted by the legislature and its power to contract, including contracts for employment, is only such as is conferred either expressly or by necessary implication.' (Citations omitted.)" *Gragg v. U.S.D. No. 287*, 6 Kan. App. 2d at 155.

A municipal corporation cannot bind itself by any contract beyond the scope of its powers, and anyone contracting with the corporation is deemed to know the corporate limitations in this respect. Thus, any attempt by a board of education to contract for terms violating specific statutory terms would be *ultra vires* and void. *Gragg*, 6 Kan. App. 2d at 155.

*Burk v. Unified School Dist. No. 329, Wabaunsee Cty.*, 646 F. Supp. 1557, was decided prior to the last session of the legislature and, although Burk was an administrator, we believe the reasoning is also applicable to a classroom teacher. In *Burk*, the court reasoned:

"This interpretation, however, would clearly conflict with the Due Process and Administrators' Acts, which by negative implication, provide that nontenured personnel may be dismissed for any reason or no reason at law.

"All statutes *in pari materia* (i.e., those enacted by the same legislature concerning the same subject matter) must be read and construed together. *City of Overland Park v. Nikias*, 209 Kan. 643, 646, 498 P.2d 56, 59 (1972). Such statutes must be construed in harmony if possible to the end that all may be given full force and effect. *Id.*

"The only way in which the Evaluation Act can be read in harmony with the Due Process and Administrators' Acts is to read K.S.A. 72-9004(f) very narrowly. Construed in this manner, we read subsection (f) as merely requiring that the Board evaluate the employee at some time before nonrenewal and that the Board follow its own procedures. It does not require the Board to renew if the employee possesses certain qualities or nonrenew if the employee lacks certain qualities.

That would clearly contradict the Kansas Legislature's intent in enacting the Due Process and Administrator's Acts.

"Furthermore, although the stated purpose of the Evaluation Act is 'to provide for a systematic method of improvement of school personnel,' K.S.A. 72-9001, there is no requirement that the employee, particularly a nontenured employee about to be nonrenewed, be given an opportunity to improve before notice of nonrenewal may be given. To imply such a requirement would put the Evaluation Act at odds with the fact that only tenured employees are entitled to special protection as provided in the Due Process and Administrators' Acts. The only consistent interpretation of the Evaluation Act is that its purpose is to provide for the improvement of employees who *remain* in the school district's employ." 646 F. Supp. at 1563.

## As to a contract right, the *Burk* court said:

"In the case at bar, the school board's evaluation policy and other items relied upon by plaintiff, requiring that the employee be given the opportunity to correct his deficiencies, amount to de facto tenure for teachers and principals employed for less than two years. As we discussed above, this is in direct conflict with the Due Process and Administrators' Acts, which provide nontenured employees no expectation of continued employment.

"A school district is an arm of the state 'existing only as a creature of the legislature to operate as a political subdivision of the state.' *Wichita Public Schools Employees Union v. Smith*, 194 Kan. 2, 4, 397 P.2d 357, 359 (1964). A school district or Board of Education has only limited authority to promulgate policies and enter into contracts. Any attempt by a district or board to enter into a contract or formulate a policy that violates state law is ultra vires and void. *Gragg v. U.S.D. No. 287*, 6 Kan. App. 2d 152, 155, 627 P.2d 335, 339 (1981). As the court of appeals stated in *Gragg*:

" 'A school district has only such power and authority as is granted by the legislature and its power to contract, including contracts for employment, is only such as is conferred either expressly or by necessary implication. *Wichita Public Schools Employees Union v. Smith*, 194 Kan. 2, 4, 397 P.2d 357 (1964).

" 'One who makes a contract with a municipal corporation is bound to take notice of limitations on its power to contract and also of the power of the particular officer or agency to make the contract. The municipal corporation cannot in any manner bind itself by any contract which is beyond the scope of its powers, and all persons contracting with the corporation are deemed to know its limitations in this respect. *Weill & Associates v. Urban Renewal Agency*, 206 Kan. 405, Syl. ¶ 8, 479 P.2d 875 (1971).' 6 Kan. App. 2d at 155, 627 P.2d at 338-39.

"Any attempt by the Board to enter into a contract or promulgate an evaluation policy giving an employee rights in conflict with the Due Process and Administrators' Acts would be ultra vires and void. We must therefore hold that plaintiff had no contractual right to continued employment. Consequently, we will grant defendants' motion for directed verdict on plaintiff's claim that he was deprived of a property interest in continued employment as principal of Wabaunsee High School." 646 F. Supp. at 1564-65.

The legislature did not change the statutes, as it could have done if it desired a different result in future similar factual situations, thus adding credence to the *Burk* holding regarding the legislative intent. We thus conclude the legislature did not intend to authorize school districts to enter into contracts that would have the effect of defeating the two consecutive years of employment provision in K.S.A. 72-5445.

Affirmed.