1997 ME 149

Sherry SKIDGELL

v.

UNIVERSAL UNDERWRITERS
INS. CO.

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 16, 1997.
Argued June 11, 1997.
Decided July 15, 1997.

N. Laurence Willey, Jr., Laurie Ann Miller (orally), Ferris, Dearborn & Willey, Brewer, for plaintiff.

David C. King, Barbara A. Cardone (orally), Rudman & Winchell, Bangor, for Universal Underwriters.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

[¶ 1] Sherry Skidgell appeals from the summary judgment entered in the Superior Court (*Penobscot County, Marsano, J.*), in favor of Universal Underwriters Insurance Company on Skidgell's complaint for injuries arising from an accident suffered while riding as a passenger on a motorcycle. We agree with Skidgell's contention that the court erred by concluding that Universal, pursuant to the "other insurance" provisions in its policy, was entitled to set off from its underinsured motorist liability coverage[1] for Skidgell the full amount of Skidgell's recovery from the tortfeasor, and thus had no liability to Skidgell. Accordingly, we vacate the summary judgment.

[¶ 2] On June 30, 1994, Skidgell was riding as a passenger on a motorcycle owned and operated by Maurice Bedard and was injured as a result of a collision between the motorcycle and a car being driven by Darren McKenzie. At the time of the collision, McKenzie had a policy from New Hampshire Indemnity Insurance Company (New Hampshire) with a bodily injury limit for liability insurance coverage of $20,000. Bedard carried personal automobile insurance issued by Universal, providing underinsured motorist coverage up to $20,000. Skidgell carried personal automobile insurance, through her parents with whom she resided, issued by Dairyland Insurance Company, providing underinsured motorist coverage up to $20,000. Skidgell settled her personal injury claim against McKenzie for the full $20,000 policy limit and against Dairyland for $5,000. Because her damages exceeded $20,000, Skidgell then sought to recover from Universal an amount of underinsured motorist coverage she claimed was available to her pursuant to Universal's policy.

[¶ 3] Universal filed a motion for a summary judgment arguing that because Universal's underinsured motorist coverage for Skidgell was primary, it was entitled to a setoff against its liability of the entire amount recovered from McKenzie, the tortfeasor. Agreeing with Universal, the court concluded that pursuant to the "other insurance" language in the Universal and Dairyland policies, Dairyland's underinsured motorist coverage was excess and Universal's was primary. The court entered a summary judgment in favor of Universal because it, as the provider of primary uninsured motorist coverage for Skidgell, was entitled to set off the entire $20,000 that Skidgell recovered from the tortfeasor. *Cobb v. Allstate Ins. Co.*, 663 A.2d 38 (Me.1995). From that judgment, Skidgell appeals.

[¶ 4] When, as here, there is no genuine issue as to any material fact, we review the grant of a motion for summary judgment by examining the record to determine whether the trial court committed an error of law. *McGillivray v. Royal Ins. Co.*, 675 A.2d 524, 525 (Me.1996) (citation omitted).

I.

[¶ 5] We first must address Universal's contention, not raised in the trial court but advanced as an alternative reason for upholding the judgment, that the Superior Court properly entered a summary judgment in its favor because McKenzie's vehicle is not underinsured. Universal contends that the underinsured motorist provision in Dairyland's policy excludes *entirely* coverage for Skidgell as a passenger on a motorcycle. Because there is no underinsured motorist coverage for Skidgell pursuant to Dairyland's policy, Universal argues, and because the amount of coverage available to her as an underinsured motorist pursuant to Universal's policy, $20,000, is not greater than the liability coverage on the tortfeasor, McKenzie, McKenzie's ve-

---

1. The statute at issue in this case, 24-A M.R.S.A. § 2902 (1990), the uninsured motor statute, encompasses by its terms underinsured motor vehicles. For the purposes of the statute, an "underinsured motor vehicle" is a motor vehicle for which coverage is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided for pursuant to the motorist's financial responsibility laws of this State or less than the limits of the injured party's uninsured vehicle coverage. As we discuss *infra*, the vehicle owned by the tortfeasor, Darren McKenzie, was underinsured pursuant to the statute.

hicle is not underinsured. 24–A M.R.S.A. § 2902 (1990). We disagree.

[¶ 6] Universal argues that Dairyland's policy only provides underinsured motorist coverage for injuries suffered while occupying a "car" which is defined in the policy as a "four wheel motor vehicle licensed for use on public roads." Because Skidgell was occupying a motorcycle, and not a car, Universal contends there is no underinsured motorist coverage at all. While we agree with Universal's interpretation of the *language* of Dairyland's policy and that Dairyland's policy purports to limit underinsured motorist coverage to passengers in a car, as opposed to a motorcycle, that language is contrary to the public policy embodied in 24–A M.R.S.A. § 2902, and is ineffective in excluding such coverage.

[¶ 7] The validity of the stated policy provisions and of Universal's contentions must be determined in the light of the requirements of 24–A M.R.S.A. § 2902 that provides in part:

No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness of disease, including death resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle. The coverage herein required may be referred to as "uninsured vehicle coverage." For the purposes of this section, "underinsured motor vehicle" means a motor vehicle for which coverage is provided, but in amounts less then the minimum limits for bodily injury liability insurance provided for under the motorist's financial responsibility laws of this State or less than the limits of

the injured party's uninsured vehicle coverage.

24–A M.R.S.A. § 2902(1) (1990).[2] It is well recognized that a contract, including an automobile liability insurance policy, is presumed to incorporate all relevant mandatory provisions of the statute pursuant to which it was made. Existing statutes governing the subject matter of a contract must in normal circumstances be read as a constituent part thereof. *See Wescott v. Allstate Ins.*, 397 A.2d 156 (Me.1979); *Security Ins. Group v. Emery*, 272 A.2d 736 (Me.1971); *Camire v. Commercial Ins. Co.*, 160 Me. 112, 198 A.2d 168 (1964). Moreover, statutory mandates control, and override any contrary provisions in Dairyland's policy. *See Globe Indem. Co. v. Jordan*, 634 A.2d 1279, 1283 (Me.1993); *Wescott v. Allstate Ins.*, 397 A.2d at 169.

[¶ 8] The purpose of section 2902 is to permit an insured injured person the same recovery which would have been available to her had the tortfeasor been insured to the same extent as the injured party. *See Tibbetts v. Maine Bonding & Casualty Co.*, 618 A.2d 731, 734 (Me.1992) (citation omitted). We have construed section 2902 liberally to effectuate its purpose. Conditions and exceptions in insurance contracts purporting to limit coverage, on the other hand, are interpreted strictly against the insurer and liberally in favor of the insured. *See Wescott v. Allstate Ins.*, 397 A.2d at 167.

[¶ 9] Dairyland's underinsured motorist insurance provision provides:

**Our Promise To You**

We promise to pay damages, excluding punitive or exemplary damages, the owner or operator of an uninsured motor vehicle is legally obligated to pay because of bodily injury *you* suffer in a *car accident* while *occupying a car*, or, as a pedestrian, as a result of having been struck by an uninsured *motor vehicle*.

The policy defines "car" as:

[A] four wheel *motor vehicle* licensed for use on public roads. It includes any motor

---

**2.** We have previously held that a motorcycle is a motor vehicle within the definition of section 2902. *See Daigle v. Hartford Ins. Co.*, 573 A.2d 791 (Me.1990).

home that isn't used for business purposes and any *utility trailer.*

Interpreting that language according to its plain and commonly accepted meaning, the policy language excludes Skidgell as a person entitled to recover underinsured motorist damages in these circumstances. *See Brackett v. Middlesex Ins. Co.,* 486 A.2d 1188, 1190 (Me.1985).[3] Skidgell was injured as a passenger on a motorcycle and the underinsured motorist coverage only applies to injuries suffered "in a car accident while occupying a car." To the extent that Dairyland's exclusion restricts Skidgell's right to recover damages resulting from her injuries alleged to be caused by an underinsured motorist, it is contrary to the purpose of the statute, and is against public policy. Dairyland's policy could not exclude Skidgell's right to recover from it. The result is Skidgell is provided underinsured motorist coverage by Dairyland even though she was injured while a passenger on a motorcycle. *Globe Indem. Co. v. Jordan,* 634 A.2d at 1283. Accordingly, because Skidgell has underinsured motorist coverage from Dairyland, in the amount of $20,000, and because she also has $20,000 of underinsured motorist coverage pursuant to Universal's policy, the McKenzie vehicle is underinsured. 24–A M.R.S.A. § 2902(1).

## II.

[¶ 10] We now address and agree with Skidgell's contention that the court erred by its determination that Dairyland's "other insurance" clause provided excess underinsured motorist coverage resulting in Universal, as the only primary coverage underinsured motorist insurer, being able to setoff the entire amount Skidgell recov-

ered from the tortfeasor. *See Cobb v. Allstate Ins. Co.,* 663 A.2d 38, 40–41 (Me. 1995) (where one insurer's underinsurance coverage is primary, and another's underinsurance coverage is excess, the primary insurer is entitled to a setoff against its liability of the entire amount recovered from a tortfeasor).

■ [¶ 11] Conflicts in policy language may have to be resolved when more than one applicable insurance policy contains an "other insurance" clause.[4] *See York Mut. Ins. Co. v. Continental Ins. Co.,* 560 A.2d 571, 573 (Me.1989). The "other insurance" clause in Universal's policy provides that "[i]f there is other applicable insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits." Although Universal's coverage *could* be either primary or excess, in the absence of language making it excess, insurance coverage is considered primary. *See Royal Globe Ins. Co. v. Hartford Accident & Indem. Co.,* 485 A.2d 242, 244 (Me.1984). Universal's coverage is, therefore, primary. *See York Mut. Ins. Co. v. Continental Ins. Co.,* 560 A.2d at 573.(Citation omitted).

[¶ 12] Dairyland's policy also contains an "other insurance" clause which reads:

If there is other similar insurance applicable on the same basis for ... Uninsured Motorist ... we will pay only our share of the loss. Our share is determined by adding up the limits of this insurance and all other insurance that applies on the same basis and finding the percentage of the total which our limits represent.

This insurance is *primary* for any *car* described on the declarations page, or any

---

**3.** In *Brackett* we held that an uninsured motorist provision of an insurance policy that excluded coverage for injuries sustained by an insured while riding on a motorcycle not insured by the insurer's liability policy did not violate 24–A M.R.S.A. § 2902(1). We noted that "uninsurance motorist coverage on one of a number of vehicles owned by an insured does not extend the benefits of such coverage, for no premium, to all other vehicles owned by that insured." *Brackett v. Middlesex Ins. Co.,* 486 A.2d at 1191. (citation omitted). *Brackett,* therefore, is distinguishable from the present case because Skidgell was not injured on a uninsured vehicle that she owned,

but rather as a passenger on a vehicle owned by Bedard.

**4.** There are three basic types of other insurance clauses that regulate how liability is to be divided when multiple coverage exists. The first, a "pro-rata" clause, limits the liability of any insurer to a proportion of the total loss. The second, an "escape" clause, seeks to avoid all liability. The third, an "excess" clause, provides that the insurance will only be liable for damages in excess of coverage provided by primary insurers. *York Mut. Ins. Co. v. Continental Ins. Co.,* 560 A.2d 571, 573 n. 1(Me.1989)(citation omitted).

additional or replacement car we insure. This insurance is *excess* for the use of any other *car* we insure.

[¶ 13] Because Dairyland's policy defines "car" as "a four wheel vehicle licensed for use on the road," neither the primary or excess clause explicitly applies. As applied to coverage for Skidgell in this case, Dairyland's "other insurance" clause is silent as to whether it is primary or excess. Accordingly, it too must be considered primary. *See York Mut. Ins. Co. v. Continental Ins. Co.*, 560 A.2d at 573.[5]

[¶ 14] Because the underinsured motorist coverage of both the Universal and Dairyland policies are primary, the loss is shared pro rata and each policy contributes until the limit of the smaller policy is exhausted with the remaining portion of the loss then being paid from the larger policy up to the limits. *See Cobb v. Allstate Ins. Co.*, 663 A.2d 38, 40 n. 8 (Me.1995). Universal does not benefit from being the only primary insurance carrier and accordingly, is not entitled to set off the entire amount of Skidgell's recovery from the tortfeasor. Rather, it is only entitled to a prorated set-off.

The entry is:

Judgment vacated. Remanded for proceedings consistent with the opinion herein.

---

5. Contrary to Universal's contention, our finding that Dairyland's uninsured motorist provision contravenes 24–AM.R.S.A. § 2902(1) does not require us to reform Dairyland's entire insurance contract. *See, e.g.,* 17A Am.Jur.2d Contracts § 247 (1991) ("If the illegal provision in a contract is severable, courts will enforce the remainder of the contract [as written] after excising the illegal portion.").