1999 ME 54

**UNITED STATES of America acting through the Rural Housing Service**

v.

**Kenneth E. WHEELER et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs March 12, 1999.

Decided April 12, 1999.

Richard H. Broderick Jr., Broderick & Broderick, P.A., Lincoln, for plaintiff.

Gary J. Norton, Norton & Weeks, Bangor, for defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] The United States Department of Agriculture, acting through the Rural Housing Service, formerly known as the Farmers Home Administration,[1] appeals from a judgment entered in the District Court (Newport, *Hjelm, J.*) granting its motion for summary judgment but refusing to allow it to recap-

---

1. For simplicity, we refer to the appellant as "the government."

ture certain interest subsidies. On appeal, the government contends that the court erred when it determined that the Subsidy Repayment Agreement precludes recapture of interest subsidies in the event of foreclosure. We agree and vacate the judgment.

## I. BACKGROUND

[¶ 2] The facts are undisputed. On November 17, 1987, Kenneth E. Wheeler and Kathleen R. Newton obtained two loans from the government, in the amounts of $43,000 and $5,600.[2] Each loan was evidenced by a promissory note and was secured by a mortgage on property owned by Wheeler and Newton, located in Dixmont, Maine. In addition to the promissory notes, the mortgage contract included a "Subsidy Repayment Agreement," articulating the terms for repayment of government interest subsidies.

[¶ 3] The interest subsidies were provided to Wheeler and Newton pursuant to Title V of the Housing Act of 1949, a federal program providing low interest loans to individuals, primarily in rural areas, "who cannot obtain credit and are therefore unable to secure decent housing." *Pealo v. Farmers Home Admin.*, 562 F.2d 744, 745 (D.C.Cir. 1977). *See also* 42 U.S.C. § 1471 *et. seq.* (1988).[3] Section 521 of the Act authorizes the government, as part of its assistance program, to provide interest subsidies, whereby a borrower's interest rate may be set as low as 1% per annum. *See* 42 U.S.C. § 1490a(a)(1). Although the loans formally bear the maximum interest rate set by the government—9.5% per annum in the present case—the actual interest rate payments paid by the borrower are the lower rates set in section 521. The borrower therefore receives a government subsidy in an amount which reflects the difference between the amount the borrower would have paid at the maximum interest rate and the amount paid at the lower rate set by the program.

[¶ 4] Eventually Wheeler and Newton defaulted on the promissory notes, and the government declared the entire debt due and filed a complaint seeking foreclosure, pursuant to 14 M.R.S.A. § 6321 (Supp.1998). As of June 15, 1998, the government alleged that Wheeler and Newton owed: $54,978.53 in principal and advances; $8,504.21 in accrued interest; and $28,180.64, as an interest subsidy subject to recapture. In their answer, Wheeler and Newton contested only the interest recapture.

[¶ 5] The government then filed a motion for summary judgment, seeking the principal due on both loans, all accrued interest, recapture of the interest subsidy, per diem interest, and collection costs. Again, the only portion of the statement of material facts contested by Wheeler and Newton was the interest subsidy. They contended that in the event of foreclosure the provision of the Subsidy Repayment Agreement that provides for recapture of the interest subsidy by the government is null and void.

[¶ 6] The trial court granted a summary judgment in favor of the government but concluded that the Subsidy Repayment Agreement precluded the government from recapturing any part of the interest subsidy. It determined that paragraph 6(g) of that Agreement "sets out the formula used to calculate interest subject to recapture. Paragraph 5, however, provides that [paragraph] 6 is inapplicable in cases ... of foreclosure. The effect of [paragraph] 5, therefore, is to remove the contractual basis under which the government would otherwise ... be entitled to seek recovery for interest subject to recapture." In essence, the court determined that paragraph 6 contained the *exclusive* method for recapture of the interest subsidy and concluded that, because paragraph 6 is inapplicable in the event of foreclosure, the government was not entitled to recapture the interest subsidy.

**2.** Although the original debt was $48,600. the amount was subsequently increased through two separate refinancings of the notes. Wheeler and Newton do not dispute the amounts owed.

**3.** Because the 1988 version of the Housing Act of 1949 was in effect at the time the parties entered into the Subsidy Repayment Agreement, we reference that version of the Act throughout. For purposes of this appeal, no significant changes have been made to the Act between 1988 and the present.

[¶ 7] The government appealed directly to this Court, pursuant to 14 M.R.S.A. § 1901(2)(A), from the summary judgment entered by the District Court challenging only the court's determination that the government may not recapture the interest subsidies.

## II. THE SUBSIDY REPAYMENT AGREEMENT

[¶ 8] The Subsidy Repayment Agreement provides, in paragraph 3, that Wheeler and Newton pledge their property as security for repayment of the interest subsidy they received from the government and provides that "the subsidy is due and payable upon the transfer of title or non-occupancy of the property by me (us)." Paragraph 4 provides that the "amount of subsidy to be repaid will be determined when the principal and interest balance is paid." In the event that the debt is satisfied in a manner other than the voluntary conveyance of the property to the government or a foreclosure, paragraph 6 prioritizes the distribution of sale proceeds, and provides the method of calculation for repayment of the interest subsidy after a sale. Paragraph 5 reiterates the parties' agreement that paragraph 6 is inapplicable when the property is voluntarily conveyed to the government or "liquidated by foreclosure."

## III. DISCUSSION

[¶ 9] The interpretation of an unambiguous contract is a question of law, *see Fleet Bank of Maine v. Harriman,* 1998 ME 275, ¶ 4, 721 A.2d 658, whereas interpretation of an ambiguous contract involves questions of fact, *see Town of Lisbon v. Thayer Corp.,* 675 A.2d 514, 516 (Me.1996). The court did not consider extrinsic evidence when interpreting the contract, nor do the parties suggest that extrinsic evidence would assist the court in its interpretation of the contract. "Because the trial court interpreted the contract from the language of the document alone, we review the court's interpretation de novo." *Alexander v. Fairway Villas, Inc.,* 1998 ME 226, ¶ 11, 719 A.2d 103.

[¶ 10] The court correctly determined that paragraph 6 is inapplicable when the government forecloses on the property. In the absence of foreclosure or voluntary conveyance of the property to the government, paragraph 6 establishes the priority by which proceeds from sale of the property are distributed and establishes a special formula for calculating the amount that must be repaid on the interest subsidy. The provisions of that paragraph, however, are tailored to circumstances where the *borrower* sells the property. For example, 6(c) states that the borrower may recover, from the sale proceeds, expenses incurred when selling the property, including sales commission, advertising costs, appraisal fees, and legal and related costs. The paragraph also contains a calculation intended to encourage compliance with the repayment provisions of the contract and to encourage the borrowers to maintain the property in good condition.[4] The result is that a borrower who maintains the property in marketable condition, timely pays the loan, and disposes of the property through voluntary sale may ultimately be relieved of repaying part, or all, of the subsidy.[5]

---

4. The balance remaining after the initial distribution of the sale proceeds is called "value appreciation." The formula enumerated in 6(g) is designed in part as a benefit to borrowers in good standing by providing that the borrower must pay the *lesser* of "(1) the full amount of the subsidy or (2) an amount determined by multiplying the 'value appreciation' by the appropriate factor." The longer the borrower in good standing owns the property, the lower the multiple factor and the greater the possibility that the borrower will repay an amount less than the total interest subsidy.

5. Although we interpret the contract solely from the language of the document, the federal statutes and regulations empowering the government to grant interest subsidies evidence both an intention to recapture all or a portion of the subsidy and an intention to create an incentive for borrowers to maintain the property in marketable condition and timely pay their mortgage. The regulations interpreting 42 U.S.C. § 1490a provide that "[t]he policy of the Farmers Home Administration is to recapture all or a portion of the interest credit ... granted." 7 C.F.R. § 1951.402 (1988). Moreover, 42 U.S.C. § 1490a(1)(D) provides that the government "shall provide for the recapture of all or a portion of such assistance rendered upon the disposition or non-occupancy of the property by the borrower.... [It] shall make provisions for incentives for the borrower to maintain the property in a marketable condition."

[¶ 11] Nothing in the contract, however, relieves individuals who default on their loan from the obligation of repaying the interest subsidy. Contrary to the court's conclusions, paragraph 6 is not the only section of the Agreement obligating Wheeler and Newton to repay the interest subsidy. Paragraphs 2, 3, and 4 provide an unambiguous contractual basis for repayment of the entire subsidy in the event of foreclosure. Paragraph 2 specifically states that Wheeler and Newton "agree to the conditions set forth in this agreement for the repayment of the subsidy granted me (us) in the form of interest credits." Paragraph 3 provides that "the subsidy *is due and payable* upon the transfer of title or non-occupancy of the property" by Wheeler and Newton. The transfer to the government of equitable title, formerly held by Wheeler and Newton, will occur upon completion of the foreclosure, triggering the obligation to repay the subsidy set forth in paragraph 3.[6] No other provision of the Agreement negates the obligation to repay the subsidy upon the transfer of the title. ·

[¶ 12] Moreover, paragraph 4 provides that repayment of the subsidy may only be deferred until title of the property is transferred or the property is not occupied. If the borrower defers repayment, "the amount of subsidy to be repaid will be determined when the principal and interest balance is paid." Accordingly, the entire interest subsidy is due immediately upon final foreclosure or voluntary conveyance of the property to the government.

[¶ 13] The government, however, is only entitled to recapture the interest subsidy to the extent that the amount of the subsidy does not exceed the remaining value of the property. When the subsidy recapture obligation cannot be fully satisfied from the value of the property, paragraph 3 of the Agreement precludes the government from requiring Wheeler and Newton "to repay any of the subsidy from other than the value (as determined by the Government) of the real estate."

[¶ 14] Accordingly, we vacate the judgment of the District Court to the extent that it precluded the government from recapturing any of the interest subsidy and remand the matter for calculation of the amount due to the government upon completion of the foreclosure proceeding.

The entry is

Judgment vacated in part. Remanded to the District Court for further proceedings consistent with this opinion.

---

6. "Under Maine law, a mortgage on real property is a conditional conveyance with legal title vested in the mortgagee." *Duprey v. Eagle Lake Water and Sewer Dist.*, 615 A.2d 600, 602 (Me. 1992). "The mortgagor retains only the right to possess the premises and the equity right of redemption." *Id.* Upon foreclosure, both legal and equitable title vest absolutely in the mortgagee. *See Atlantic Oceanic Kampgrounds, Inc. v. Camden Nat'l Bank*, 473 A.2d 884, 888 (Me.1984) (Glassman.J., concurring).