2000 ME 74

## CITY OF SACO

v.

## John M. PULSIFER.

Supreme Judicial Court of Maine.

Argued March 6, 2000.
Decided April 26, 2000.

---

Daniel L. Cummings (orally), Norman, Hanson & DeTroy, LLC, Portland, for plaintiff.

Michael J. Gartland (orally), George J. Marcus, Marcus, Grygiel & Clegg, P.A., Portland, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] The City of Saco appeals from the judgment of the Superior Court (York County, *Fritzsche, J.*) dismissing the City's suit against John Pulsifer because it is barred by the statute of limitations. We affirm the judgment.

## I. BACKGROUND

[¶ 2] The facts that give rise to the City's claim are not in dispute. Pulsifer owns property within the City of Saco. In 1990, the City assessed $9,547.62 in property taxes on Pulsifer's property. In 1991, the City assessed an additional $9,870.47 in property taxes. The City failed, however, to notify Pulsifer of its tax lien and never recorded a tax lien certificate in the York County Registry of Deeds pursuant to 36 M.R.S.A. § 942 (1990 & Supp.1999).

[¶ 3] On November 1, 1991, Pulsifer filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Maine, pursuant to 11 U.S.C.A. § 301 (1993). At that time, an automatic stay operated to prevent any creditor from proceeding against Pulsifer in state court. *See* 11 U.S.C.A. § 362(a) (1993 & Supp.1999). The City did not file a proof of claim.[1] On September 24, 1992, the Bankruptcy Court entered an order discharging Pulsifer's prebankruptcy debts. The automatic stay was lifted on that date. *See* 11 U.S.C.A. § 362(c)(2) (1993). Because the City failed to protect its interest, it did not receive a distribution pursuant to this order. *See* 11 U.S.C.A. § 726 (1993 & Supp.1999). The bankruptcy case was closed in 1995.

[¶ 4] On February 11, 1999, the City filed a complaint in the Superior Court against Pulsifer seeking payment of the 1990 and 1991 taxes. Following discovery, the City moved for summary judgment. A hearing was held and the Superior Court (*Fritzsche, J.*) denied the City's motion for summary judgment and entered judgment for Pulsifer. The City conceded that their claim was time-barred, pursuant to 14 M.R.S.A. § 752 (1980), unless another statutory mechanism operated to toll the running of that time.[2] The City presented only one mechanism for the tolling of the statute of limitations. Specifically, it relied on the provisions of 14 M.R.S.A. § 866 (1980). The court rejected the argument that section 866 applied to the proceedings and therefore concluded that the City's suit was barred. This appeal followed.

## II. DISCUSSION

[¶ 5] We review questions of statutory construction de novo. *See Cook v. Lisbon Sch. Comm.*, 682 A.2d 672, 676 (Me.1996). "If the meaning of this language is plain, we must interpret the statute to mean exactly what it says." *Concord Gen. Mut. Ins. Co. v. Patrons–Oxford Mut. Ins. Co.*, 411 A.2d 1017, 1020 (Me.

---

1. Had the City filed a proof of claim, it is likely that the 1990 taxes would have been among the priority claims and would have been paid. *See* 11 U.S.C.A. 508(a)(7)(B) (Supp.1999).

2. The previous incarnation of the United States Bankruptcy Code, the Bankruptcy Act of 1898, 11 U.S.C.A. §§ 1–1255 (1966 & Supp.1977) (repealed 1978), contained its own tolling provision. That provision was eliminated with the enactment of the new code. The new code contains a reference to state law tolling provisions, *see* 11 U.S.C.A. § 108(c)(1) (1993), and provides additional protection by tolling the statute of limitations for thirty days after discharge, *see* 11 U.S.C.A. 108(c)(2) (1993).

1980), *quoted in Kimball v. Land Use Regulation Comm'n,* 2000 ME 20, ¶ 18, 745 A.2d 387, 392. We conclude that the plain language of section 866 supports the trial court's conclusion.

[¶ 6] Section 866 provides, in pertinent part:

> If a person is adjudged an insolvent debtor after a cause of action has accrued against him, and such cause of action is one provable in insolvency, the time of the pendency of his insolvency proceedings shall not be taken as a part of the time limited for the commencement of the action.

14 M.R.S.A. § 866. This portion of section 866 first appeared more than a hundred years ago, in 1887, to toll the statute of limitations for causes of actions affected by the Maine Insolvency Act of 1878. The language of section 866 exactly tracks the language of the now ancient Insolvency Act. Under that Act, an individual was adjudged an insolvent debtor and debts were provable in insolvency. *See* R.S. ch. 74, §§ 23, 24 (1878).

[¶ 7] The pertinent language of section 866 has not been changed in over one hundred years. In contrast, bankruptcy laws have undergone significant changes during the last century. Federal bankruptcy law has now replaced state law provisions. Under the current federal bankruptcy code, an individual is never "adjudged an insolvent debtor," and debts are no longer "provable in insolvency."

[¶ 8] Nevertheless, the City urges us to read section 866 in a manner that would give it meaning under the current federal bankruptcy code by replacing references to "insolvency" with analogous references applicable under the current system. We decline the invitation. Although generally "the court should give meaning to the language chosen by the Legislature to the greatest extent possible," *see Kimball,* ¶ 20, 745 A.2d at 392, we do not have unfettered discretion to redraft statutory language that has as its subject other leg-islation that has long since been repealed, *see id.* ¶ 26, 745 A.2d at 394.

[¶ 9] As the trial court concluded, the language of section 866 simply does not have meaning in the modern bankruptcy context. Nor is there any authority for importing modern language and modern concepts into this century-old piece of legislation. Even if we were to attempt such a creative interpretation, we would have to make assumptions about legislative intent regarding the need for, and the duration of, a tolling provision. Although there are some similarities in the language and concepts found in both the old Maine Act and the current Federal Code, the City concedes that "the mechanisms among the statutes differ." These differences are not insignificant to our analysis. For example, the current federal system provides for three distinct categories of bankruptcy—Chapters 7, 11, and 13, whereas the Maine Act provided only one. Additionally, under the Maine Act, the automatic stay was lifted once the debts were discharged. *See* R.S. ch. 74, § 47. Under the current federal system, however, the automatic stay can be lifted on several different occasions, including (1) when property leaves the estate, (2) when the case is closed, (3) when the case is dismissed, or (4) when the debts are discharged. *See* 11 U.S.C.A. § 362(c). Moreover, under the current federal system, a creditor may obtain relief from the stay, *see* 11 U.S.C.A. § 362(d) (1993), an option not available under the Maine Act.

[¶ 10] More importantly for our analysis today, section 866, by its own terms, only applies after two conditions are met: (1) a creditor with a claim against the debtor has "proven" that his debts are recoverable, and (2) the debtor has been "adjudged an insolvent debtor." 14 M.R.S.A. § 866. Only after these two conditions are met, would section 866 toll the statute of limitations. Because the provisions of the current federal system do not require that debts be provable or that a debtor be "adjudged" an insolvent debtor (or even a

bankrupt), we are left guessing at when section 866 should begin to toll the statute of limitations. We could decide that the filing of a bankruptcy petition would be an appropriate starting point. However, we could also conclude that another date (such as the filing of a reorganization plan, *see* 11 U.S.C.A. §§ 1121, 1321 (1993 & Supp. 1999), or the first creditor's meeting, *see* 11 U.S.C.A. § 341 (1993 & Supp.1999)) triggered the tolling provision.

[¶ 11] Similarly, section 866 provides that the statute of limitations should be tolled during the "pendency of [the] insolvency proceeding." Because there is no "insolvency proceeding" under the current system, however, we are again left to speculate at whether the statute should be tolled during the entire proceeding, or just during the automatic stay, while creditors' rights to sue are actually hindered. Because of the significant conceptual differences between the old Maine law and the current federal law, simply inserting "bankruptcy proceeding" in place of "insolvency proceeding" may not give effect to the legislative purpose supporting section 866.

[¶ 12] If section 866 should be redrafted and made applicable to the concepts embodied in the current federal bankruptcy code, it is the role of the Legislature, not the court, to undertake the redrafting. The Legislature has already done so in the context of the collection of taxes due to the State of Maine. There, it has explicitly extended the statute of limitations for the collection of state taxes when an individual files for protection under the federal bankruptcy code. *See* 36 M.R.S.A. § 176–A(16) (Supp.1999). Section 176–A(16) provides that "[w]hen a taxpayer files for protection under the United States Bankruptcy Code, the assessor's right to collect the tax due by levy continues until 6 years after the date of discharge or dismissal of bankruptcy proceeding or until 10 years after the assessment of the tax becomes final, whichever occurs later." *Id.* Thus, it is evident that the Legislature knows how to toll the running of the period of limitations in the context of tax collection and has chosen not to do so with regard to municipal taxes.[3]

[¶ 13] We agree with the Superior Court that the plain language of section 866 does not apply to the current bankruptcy system and cannot be applied by direct analogy, and we decline the City's invitation to import modern language and concepts into this century-old statute. Because section 866 cannot be used to toll the running of the statute of limitations, and no other provision of law operates as a tolling mechanism, the court did not err in dismissing the City's complaint.

The entry is:

Judgment affirmed.

---

3. It is noteworthy that, in the tolling provision contained in section 176–A(16), the Legislature chose two alternative dates, the date of discharge or the date of dismissal, as the point at which tolling ceases. It did not set the date that the bankruptcy proceeding is *closed* as the outside date. Yet, the City would have us engraft upon the ancient language of section 866 new language establishing the "close" of the federal bankruptcy case as the outside date. Even if we were inclined to accept the City's position that section 866 has life in the context of modern bankruptcy law, the language of the Maine Insolvency Act of 1878 along with the provisions of section 176–A(16) would suggest that tolling should cease not at the eventual close of the bankruptcy case, but at the time that Pulsifer's debts were discharged. Under that interpretation, because the date of discharge, September 24, 1992, occurred more than six years prior to the filing of the City's petition, the City's claim would still be time-barred.