2000 ME 143

**Mary Jane HALLISSEY** [1]

v.

**SCHOOL ADMINISTRATIVE DISTRICT NO. 77.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 8, 2000.

Decided July 24, 2000.

**1.** Mary Jane Hallissey brings this action as parent and next friend of Brendan J. Hallissey.

Francis J. Hallissey, Machias, for plaintiff.

Deirdre M. Smith, Hugh G.E. MacMahon, Drummond Woodsum & MacMahon, Portland, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Mary Jane Hallissey appeals from the summary judgment entered in the Superior Court (Washington County, *Humphrey, J.*) holding as a matter of law that Hallissey was not residing within Maine School Administrative District No. 77 (SAD 77) for the purpose of receiving a tuition subsidy, pursuant to 20–A M.R.S.A. § 5204 (1983),[2] to defray the cost of her son's tuition at a private school. Hallissey contends that it was error for the court to determine as a matter of law (1) that she was not residing within SAD 77 during the years that she lived in Cape Elizabeth so

that she could attend law school, and (2) that her decision to move to Cape Elizabeth did not constitute an exception to the residency requirement, *see* 20–A M.R.S.A. § 5205(5) (1993).[3] We disagree and affirm the judgment.

[¶ 2] The material facts are not in dispute. Hallissey owns a house in the Town of Whiting, a part of SAD 77. SAD 77 does not have its own public high school. Pursuant to section 5204(4), SAD 77 provides a tuition subsidy for high-school students whose parents reside within the district to attend private schools or public schools in other districts.

[¶ 3] In November 1995, Hallissey, who was at that time living in the Whiting home, initiated litigation against SAD 77 because it was not providing the tuition payments for her son, Brendan, to attend John Bapst High School in Bangor. The issue raised in her complaint was whether section 5204(4) required SAD 77 to authorize a subsidy of Brendan's tuition at John Bapst High School, the private school he had elected to attend. The litigation was resolved by a settlement agreement, pursuant to which SAD 77 agreed to pay $3,500 annually toward Brendan's tuition to John Bapst so long as he remained enrolled there in good standing. In addition, continuance of this subsidy in future school years was contingent on "Mary Jane Hallissey's continuing status as both

2. Section 5204 provides in pertinent part as follows:

The following provisions govern the right of secondary students to attend school in another school administrative unit other than the one in which they are resident.

. . . .

4. **No secondary school.** Secondary students whose parents reside in a unit which neither maintains a secondary school nor contracts for secondary school privileges may attend a private school approved for tuition purposes, a public school in an adjoining unit which accepts tuition students, or a school approved for tuition purposes in another state or country upon permis-

sion of officials of the receiving school. The school administrative unit where the students' parents reside shall pay tuition in the amount up to the legal tuition rate as defined in chapter 219.

3. Section 5205(5) provides as follows:

5. **Temporary Residence.** A student who temporarily resides in a school administrative unit shall be considered a resident of that school unit if the student is living with a parent, who because of employment, moves from place to place. This subsection may not be considered to abridge that student's rights in the school administrative unit where the student permanently resides.

a legal resident of Whiting and legal custodian of [ ] Brendan J. Hallissey."

[¶ 4] Several months later, at the beginning of the 1996–97 school year, Hallissey began attending the University of Maine School of Law in Portland. In order to live within a reasonable commuting distance of the law school, Hallissey and another individual purchased a home in Cape Elizabeth in which she lived during the school years 1996–97 and 1997–98.

[¶ 5] When SAD 77 learned that Hallissey was living in Cape Elizabeth, and had enrolled her younger son Patrick in its public schools, the District sent a letter to her attorney requesting an explanation. When no explanation was provided, SAD 77 concluded that Hallissey was no longer residing in Whiting and therefore did not list Brendan as a student eligible to receive the subsidy to John Bapst for the 1996–97 school year. Hallissey again commenced litigation, this time seeking a determination of her rights pursuant to the parties' settlement agreement.

[¶ 6] SAD 77 filed a motion for a summary judgment arguing that the residence requirement of section 5204(4) required the parent to actually live in the District to be eligible to receive the subsidy. Conversely, Hallissey filed a cross-motion for a summary judgment arguing that, pursuant to the settlement agreement, she needed only to be a "legal resident" of the District to be eligible for the subsidy, or in the alternative, that she was entitled to the tuition subsidy pursuant to the "temporary residence" exception provided by section 5205(5). The trial court agreed with SAD 77's position that Hallissey no longer resided within the District and determined that she was therefore not entitled to the tuition subsidy. This appeal followed.

[¶ 7] When considering an appeal from a summary judgment, we view the evidence "in a light most favorable to the party against whom the judgment was entered to determine whether the record supports the trial court's conclusion that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Cambridge Mut. Fire Ins. Co. v. Vallee,* 687 A.2d 956, 957 (Me.1996). A summary judgment is appropriate when "the parties are not in dispute over the facts, but differ only as to the legal conclusions to be drawn from those facts." *Tondreau v. Sherwin–Williams Co.,* 638 A.2d 728, 730 (Me.1994).

[¶ 8] "[A]pproved settlement agreements are binding as to matters agreed upon ... and principles of contract [law] govern their interpretation." *Soucy v. Sullivan & Merritt,* 1999 ME 1, ¶ 7, 722 A.2d 361, 363 (citations omitted). "A contract is to be interpreted to effect the parties' intentions as reflected in the written instrument, construed with regard for the subject matter, motive, and purpose of the agreement, as well as the object to be accomplished." *Handy Boat Service, Inc. v. Professional Services, Inc.,* 1998 ME 134, ¶ 7, 711 A.2d 1306, 1308. "The interpretation of an unambiguous contract is a question of law ... whereas the interpretation of an ambiguous contract involves a question of fact." *See United States v. Wheeler,* 1999 ME 54, ¶ 9, 726 A.2d 1264, 1266.

[¶ 9] The settlement agreement into which the parties entered demonstrates that the parties intent was to clarify their respective rights and obligations pursuant to section 5204. Nevertheless, Hallissey argues that the presence of the term "legal resident" in the settlement agreement grants her a broader right to the tuition subsidy than section 5204(4) provides other parents who live in Whiting, i.e., she is not required to actually live in Whiting. She does not, however, cite to any record evidence indicating she sought to receive a benefit in excess of the statute's provision regarding her right to the subsidy, or that either party had any such expectation when they entered into the settlement agreement.

[¶ 10] SAD 77, on the other hand, argues that the parties' intent when they entered

into the settlement agreement was to place Hallissey in the same position that she would have been in had she successfully pursued her initial cause of action. In support of its position, SAD 77 argues that because it is a public body it could not have entered into the settlement agreement with the intent that the term "legal resident" would require less of Hallissey than that of the term "reside" in section 5204(4). As such, it could not have acted in a manner inconsistent with and in excess of the mandate of section 5204(4) because such an agreement would be in excess of its power and thus void.

[¶ 11] We have stated that public bodies, including school districts, "may exercise only that power which is conferred upon them by law. The source of that authority must be found in the enabling statute either expressly or by necessary inference as an incidence essential to the full exercise of powers specifically granted." *Churchill v. S.A.D. # 49 Teachers Ass'n*, 380 A.2d 186, 192 (Me.1977); *see also State v. Fin & Feather Club*, 316 A.2d 351, 355 (Me.1974).[4] With respect to school administrative units, Title 20–A, section 2(2) provides that "[i]t is the intent of the Legislature that the control and management of the public schools shall be vested in the legislative and governing bodies of local school administrative units, *as long as those units are in compliance with·appropriate state statutes*." 20–A M.R.S.A. § 2(2) (1992) (emphasis added).

[¶ 12] Section 5204 expressly provides that it shall "govern the right of secondary students to attend school in another school administrative unit other than the one in which they are resident." Accordingly, SAD 77 argues that its intent when it entered in the agreement was to act in compliance with section 5204, and thus the term "legal resident" was intended to be synonymous with the term "reside" in the statute. As there is no evidence of bad faith or otherwise improper conduct by either party, we assume that SAD 77 is correct in its assertion that the parties entered into the settlement agreement with section 5204(4) in mind.[5]

[¶ 13] Where a contract is entered into pursuant to a statute, we have stated that "[i]t is well recognized that [the] contract ... is presumed to incorporate all relevant mandatory provisions of the statute pursuant to which it was made." *Cf. Skidgell v. Universal Underwriters Ins.*, 1997 ME 149, ¶ 7, 697 A.2d 831, 833. "Existing statutes governing the subject matter of a contract must in normal circumstances be read as a constituent part

---

4. Other courts have also recognized that public bodies such as school districts are creations of state legislatures and are therefore of limited authority to act. *See, e.g., Miller v. Board of Educ., Unified Sch. Dist. No. 470*, 12 Kan.App.2d 368, 744 P.2d 865, 868 (1987), *aff'd* 242 Kan. 817, 752 P.2d 113 (1988). In *Miller*, a Kansas court stated that,

> [a] school district has only such power and authority as is granted by the legislature and its power to contract ... is only such as is conferred either expressly or by necessary implication.... A municipal corporation cannot bind itself by any contract beyond the scope of its powers, and anyone contracting with the corporation is deemed to know the corporate limitations in this respect. Thus, any attempt by a board of education to contract for terms violating specific statutory terms would be *ultra vires* and void.

*Id.*

5. Although we do not conclude that SAD 77 entered into the settlement agreement with the intent to act in excess of its authority, it is questionable whether such an agreement would even be enforceable. It is well settled that notice of the limitations on a public body's power to contract is imputed to the individual with whom the public body makes the contract. *See* McQuillin Mun. Corp. § 29.04 (3rd ed. rev.1999). McQuillin states that,

> The municipal corporation cannot in any manner bind itself by any contract which is beyond the scope of its powers.... A contrary doctrine would be fraught with danger. It is better that the innocent contracting party suffer from the municipality's mistakes than to adopt rules which, through improper combination or collusion, could be detrimental or injurious to the public.

*Id.*

thereof." *Id.* As the parties' intent when they entered into the settlement agreement was to set forth their respective rights and obligations pursuant to section 5204(4), we must determine the meaning of the statute's provision that the district in which a student's parents *"reside"* shall subsidize the student's tuition. *See* 20–A M.R.S.A. § 5204(4) (1983).

 [¶ 14] We review questions of statutory construction *de novo. See City of Saco v. Pulsifer,* 2000 ME 74, ¶ 5, 749 A.2d 153, 154. When construing a statute, "we look to the plain meaning of the language to give effect to the legislative intent." *Fairchild Semiconductor Corp. v. State Tax Assessor,* 1999 ME 170, ¶ 7, 740 A.2d 584, 587 (quoting *Koch Refining Co. v. State Tax Assessor,* 1999 ME 35, ¶ 4, 724 A.2d 1251, 1252–53). In so doing, "we consider the whole statutory scheme for which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *See id.* (quoting *Estate of Whittier,* 681 A.2d 1, 2 (Me.1996)).

[¶ 15] Section 5204 requires that the district in which the student's parent *resides* shall provide the tuition subsidy. *See* 20–A M.R.S.A. § 5204 (1983).[6] Given its ordinary meaning, the term "reside" means "to live in a place for a permanent or extended time." WEBSTER'S II: NEW RIVERSIDE UNIVERSITY DICTIONARY 1000 (1984). Other courts that have discussed the meaning of the term within this statutory context also appear to require something more than owning a home within a district. *See, e.g., School Dist. No. 16–R Umatilla County v. McCormmach,* 238 Or. 51, 392 P.2d 1019, 1022 (1964) (stating that

for school purposes the term "residence" signifies the place where one lives with some degree of permanency); *Anderson v. Breithbarth,* 62 N.D. 709, 245 N.W. 483, 487 (1932) (construing statute based on residence of the child, and stating that "residing in district" means the *actual* residence of the child), *cited with approval in Lapp v. Reeder Pub. Sch. Dist. No. 3,* 491 N.W.2d 65, 68 (N.D.1992); *Lisbon Sch. Dist. No. 1 v. Landaff Town Sch. Dist.,* 75 N.H. 324, 74 A. 186, 187 (1909) (noting that the term "resides" is the actual place where a student lives, not where the student has a legal domicile).

[¶ 16] In addition to the plain meaning of the term "reside," we find that the Legislature's objective with respect to the education of the children of the State of Maine supports our interpretation. The Legislature endeavors to ensure that each child will be entitled to an *opportunity* to receive a free public education,[7] not to guarantee children a free education at any public or private school of their choice. Within the statutory scheme, section 5204(4)'s function is limited to authorizing the provision of tuition subsidies to the parents of children who live within school administrative units that simply do not have the resources to operate a public school system, and whose children would otherwise not be given an opportunity to receive a free public education.

 [¶ 17] Thus, our view that section 5204(4) limits the tuition subsidy to students whose parents actually reside in such districts does not stray from the Legislature's objective to provide each eligible person an *opportunity* to receive a free public education. The present case serves

6. Notably, section 5204 does not require the District to subsidize the tuition of students whose parents "own a residence" or "are domiciled" in the district.

7. 20–A M.R.S.A. § 2(1) (1992) sets forth the State's policy on public education as follows:
 In accordance with the Constitution of Maine, Article VIII, the Legislature shall enact the laws that are necessary to assure

that all school administrative units make suitable provisions for the support and maintenance of the public schools. It is the intent of the Legislature that every person within the age limitations prescribed by state statutes shall be provided *an opportunity to receive the benefits of a free public education.*
(Emphasis added.)

to illustrate this point, as each of Hallissey's sons *was eligible* to receive a free public education in Cape Elizabeth. Accordingly, we read section 5204(4) to indicate a legislative intent that to "reside" within a district for purposes of satisfying the requirements of the statute, one must actually live there.

 [¶ 18] We turn next to Hallissey's argument that when she moved to Cape Elizabeth, she continued to be entitled to the tuition subsidy pursuant to a "temporary residence" exception granted to parents who move from place to place as a result of their employment, *see* 20–A M.R.S.A. § 5205(5) (1993). Contrary to her assertion, however, we do not believe this exception applies to individuals in situations similar to that of Hallissey.

 [¶ 19] Section 5205(5)'s objective is to permit parents who hold positions that truly require movement "from place to place" as a part of their employment, e.g., sales positions or other migratory positions such as farm workers, to establish a temporary residence in each district to which they are required to move. In other words, section 5205(5) applies only to individuals who hold employment positions in which travel is a part of the job description. Making a career decision to go to law school in Portland did not require Hallissey to move from place to place. Instead, Hallissey's decision to attend law school in Portland required only one move, from Whiting to the Portland area.

[¶ 20] Hallissey vacated her Whiting home and moved to Cape Elizabeth. There she purchased and lived in a home during the three years while she attended law school. She was not moving from place to place because of her employment. To the contrary, she was maintaining a stable residence in Cape Elizabeth because of her decision to make a career change.

[¶ 21] Moreover, permitting individuals in Hallissey's situation to avail themselves of the benefit provided by section 5204, which provides for the tuition subsidy, merely by virtue of owning a property in a town to which they occasionally return, opens the door to potential abuse. Hallissey's view would permit any parents who own a property in a district without a public school to claim that property as their "legal residence" and then assert that they must move from place to place because they actually reside in another town that is closer to their place of employment, which is located in a distant part of the state. To allow such individuals to claim a tuition subsidy pursuant to sections 5204 and 5205(5) is simply an abuse of the provisions. We do not believe the Legislature intended those provisions to be so applied.

[¶ 22] As it is evident that Hallissey was not residing in Whiting while she was attending law school in Portland, and that her decision to attend law school in Portland did not require her to move from place to place for the purpose of her employment, the trial court did not err when it determined as a matter of law that she was not entitled to the tuition subsidy for her son during that period of time.

The entry is:

Judgment affirmed.

CLIFFORD, J., with whom RUDMAN, J., joins, dissenting.

[¶ 23] I agree that because the historical facts in this case are not in dispute, that the entry of summary judgment is appropriate. *See Tondreau v. Sherwin–Williams Co.,* 638 A.2d 728, 730 (Me.1994). Our review of that judgment is de novo, *see Burdzel v. Sobus,* 2000 ME 84, ¶ 6, 750 A.2d 573, 575, and my review of the facts and the law leads me to conclude that Mary Jane Hallissey remained an actual resident of Whiting, and that summary judgment should have been entered in her favor.

[¶ 24] Hallissey is a mother who is attempting to better herself through a legal education. The University of Maine School of Law is located in Portland. One cannot commute there from Whiting. As do other students who attend post secondary or graduate schools away from home, Hallissey took a temporary residence in the Portland area for the purpose of attending law school. As a mother charged with the care of a younger child, naturally she took her younger son Patrick to live with her for part of the school year in her temporary residence in Cape Elizabeth.

[¶ 25] Hallissey's actual residence, however, remained in Whiting. The term "actual residence" means "a real residence, a residence existing in truth." *City of Marlborough v. City of Lynn*, 275 Mass. 394, 176 N.E. 214, 215 (1931). I disagree with the Court's conclusion that Hallissey vacated her Whiting home. In fact, Hallissey maintains an actual residence in Whiting, where she lives, except when attending law school, owns a home, is registered to vote, registers her vehicles, and docks her boats. Hallissey testified that she frequently returned to Whiting throughout the academic year and that she worked in Whiting during her summer breaks. She was in the Portland area only when law school was in session.

[¶ 26] The Court concludes that 20-A M.R.S.A. § 5204(4) (1993) was not intended to give parents a choice between two School Administrative Districts. Title 20-A, section 5205(5), however, specifically allows a parent, who establishes a temporary residence because of employment, to school her children in either the District of her permanent residence *or* the District of her temporary residence. *See* 20-A M.R.S.A. § 5205(5) (1993).[8] The statute does not require the parent to choose the same District for all her children, and indeed is not to "be construed to abridge [a] student's rights in the school administrative district unit where the student permanently resides." *Id.* The student in this case is Brendan, and his unquestioned permanent residence is Whiting. *See id.*

[¶ 27] The District has a clear obligation pursuant to section 5204(4) and the Agreement, to pay tuition for Brendan's attendance at John Bapst High School. Hallissey has a right to attend law school and to temporarily reside in the Portland area, and to have her son Patrick attend school in Cape Elizabeth when he temporarily resides there. *See* 20-A M.R.S.A. § 5205(5). Such should not result in her losing her status as a resident of Whiting any more than college students lose their status as residents of their home towns.

[¶ 28] I would vacate the judgment of the Superior Court and remand for entry of a judgment in favor of Hallissey.

---

8. Section 5205(5) states:
 **5. Temporary Residence.** A student who temporarily resides in a school administrative unit shall be considered a resident of that school unit if the student is living with a parent, who because of employment, moves from place to place. This subsection may not be construed to abridge that student's rights in the school administrative unit where the student permanently resides. 20-A M.R.S.A. § 5205(5) (1993). This section applies to Hallissey's situation as her move to Cape Elizabeth to attend law school is directly related to her employment.