2003 ME 37

**TOWN OF EAGLE LAKE et al.**

v.

**COMMISSIONER, DEPARTMENT OF EDUCATION et al.**

Supreme Judicial Court of Maine.

Argued: Oct. 7, 2002.
Decided: March 20, 2003.

William J. Smith, (orally), Van Buren, for plaintiffs.

G. Steven Rowe, Attorney General, Sarah A. Forster, Asst. Attorney General (orally), Augusta, for Dept. of Education.

Deirdre M. Smith, (orally), Daniel J. Rose, Drummond Woodsum & MacMahon, Portland, for MSAD 27.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] The Towns of Eagle Lake and Winterville (Towns) appeal from a judgment of the Superior Court (Aroostook County, *Atwood, J.*) declaring that the Towns and Maine School Administrative District No. 27 (MSAD 27) must participate in negotiations culminating in a withdrawal agreement that the Commissioner of the Maine Department of Education (Commissioner) is required to approve before the withdrawal agreement is submitted to the voters of the Towns. We affirm the Superior Court's judgment.

## I. BACKGROUND

[¶ 2] The Towns of Eagle Lake and Winterville, two of the seven member towns of MSAD 27, seek to withdraw from the district. In accordance with 20–A M.R.S.A. §§ 1403(1) and 1405 (1993), each town: presented to its respective municipal officers petitions for withdrawal signed by ten percent of its voters; held public hearings and special elections to determine whether the voters approved of withdrawal; received voter approval for the withdrawal; and notified MSAD 27 and the Commissioner of each town's election results and its grievances with the school district. In response, the Commissioner directed Eagle Lake and Winterville to appoint formal withdrawal committees, which they did.

[¶ 3] On June 22, 2000, each committee sent the Commissioner written responses

to nine questions that addressed "the required and recommended elements" of a withdrawal agreement. Deputy Commissioner Dr. Judith M. Lucarelli replied, accepting some of the committees' responses and requesting explanation of others. The Towns' withdrawal committees responded on September 12.

[¶ 4] On September 29, 2000, the Commissioner wrote to the Towns, setting out the steps necessary for withdrawal.[1] The Commissioner's letter led the Towns to bring this action in the Superior Court and subsequently to this Court. They seek a declaration "that the Commissioner's interpretation of the withdrawal statutes is erroneous, that the information on withdrawal [the Towns] have submitted is sufficient for him to provide his conditional approval, and that a date on which the towns would finally vote on withdrawal ought to be set." The Towns contend that they are responsible only for preparing a withdrawal agreement for their voters to consider and that negotiations with regard to the division of property and educational responsibilities between them and MSAD 27 are to follow, rather than precede, voter approval of the withdrawal agreement.

[¶ 5] The Towns filed their request for declaratory relief on January 31, 2001. The three parties filed motions for summary judgment and responses in July 2001. In April 2002, the Superior Court granted MSAD 27's and the Commissioner's motions, denied the Towns' motion, and entered judgment for MSAD 27 and the Commissioner. Weighing the merits of each side's interpretation of the relevant

---

1. The Commissioner's letter, in pertinent part, reads as follows:

> Sections 1403 and 1405 of Title 20–A require that a municipality seeking to withdraw from a school administrative district prepare an agreement for withdrawal, and submit that agreement to the Commissioner for his approval. Once the agreement is submitted to the Commissioner, the Commissioner has 60 days to either approve the agreement conditionally, or recommend changes. 20–A M.R.S.A. §§ 1405.2, 1403.4(B). If the Commissioner recommends changes, he is required by statute to send the agreement back for the necessary corrections, establish a maximum timeframe within which to make the corrections, and indicate that the corrected agreement shall be resubmitted to Commissioner for conditional approval before it goes to public hearing. 20–A M.R.S.A. §§ 1405.2, 1403.4(C). It is the withdrawal agreement that is discussed at the public hearing, and it is the withdrawal agreement upon which the municipalities ultimately vote. 20–A M.R.S.A. §§ 1405.2, 1403.5.
>
> *An agreement in this context must be the product of negotiations between the withdrawing municipality and the SAD. I am concerned that your most recent round of responses, as well as the materials you have submitted to date, still do not suggest that an agreement is forthcoming—in many cases, they do not even suggest that meetings or negotiations between the parties have occurred .... [W]hen you submit your proposed withdrawal agreement, this office will be looking to ensure that the parties have actually resolved the issues specified in § 1403.4(A)(1)-(11), and will not conditionally approve an agreement that merely suggests that the parties will have discussions at some unspecified date in the future.* More-over, there must either be a separate agreement for each municipality, or the agreement must clearly delineate the impact upon each municipality separately, so the municipal voters of Eagle Lake and those of Winterville each have a clear description of how the terms of the withdrawal agreement affect each of them.
>
> ... After the Commissioner conditionally approves the withdrawal agreement, the statute requires a public hearing.... After the public hearing, the final agreement must be resubmitted to the Commissioner who sets the date of the vote. 20–A M.R.S.A. §§ 1405.2, 1403.4(C)(2), 1403.5(A).
>
> Letter from Commissioner to Timmy Saucier, Eagle Lake Withdrawal Committee, and James Nadeau, Winterville Withdrawal Committee, of 9/29/00 (emphasis added).

statutes, the Superior Court held that "Title 20–A M.R.S.A. §§ 1403 and 1405 do not require the Commissioner to set a date for a municipal election to act on a withdrawal agreement until he approves the agreement with the school district as those statutes provide." Relying on *Wood v. Superintendent of Insurance,* the court based its decision on the great deference accorded the Commissioner's interpretation of the provisions of the State's education laws he is responsible for administering, including the enforcement of the requirements of Title 20–A, 20–A M.R.S.A. § 253(1),[2] and upheld the Commissioner's interpretation because the statute did not "plainly compel[ ] a contrary result." 638 A.2d 67, 70 (Me.1994). The Towns appeal this decision.

## II. DISCUSSION

[¶ 6] It would not be an oversimplification to suggest that the issue on appeal is whether the withdrawal agreement contemplated by section 1405 is an "agreement" or a "proposal."

▇▇▇▇ [¶ 7] Statutory construction is a question of law, subject to de novo review. *Hallissey v. Sch. Admin. Dist. No. 77,* 2000 ME 143, ¶ 14, 755 A.2d 1068, 1073. Our main objective in statutory interpretation is to give effect to the Legislature's intent. *Id.* To determine the intent of the Legislature, "we look first to the statute's plain meaning and, if there is ambiguity, we look beyond that language to the legislative history . . . ." *Great N. Paper, Inc. v.*

*Penobscot Nation,* 2001 ME 68, ¶ 15, 770 A.2d 574, 580 (citation omitted). "When interpreting statutes, [the Court] 'seek[s] to discern from the plain language the real purpose of the legislation, avoiding results that are absurd, inconsistent, unreasonable, or illogical.' " *Wood,* 638 A.2d at 70 (citations omitted). Further, we "consider the whole statutory scheme for which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Hallissey,* 755 A.2d at 1073 (citations omitted).

▇▇▇▇ [¶ 8] When a dispute involves an agency's interpretation of a statute it administers, "the agency's interpretation, although not conclusive, is entitled to great deference and will be upheld 'unless the statute plainly compels a contrary result.' " *Wood,* 638 A.2d at 70 (citation omitted). "If the statute is ambiguous . . . we review whether the agency's construction is reasonable." *Guilford Transp. Indus. v. Pub. Utils. Comm'n,* 2000 ME 31, ¶ 11, 746 A.2d 910, 913 (citation omitted). We do not "second-guess" an agency on issues within its area of expertise; rather, we review only to ascertain whether its conclusions are "unreasonable, unjust, or unlawful." *Wood,* 638 A.2d at 71

▇▇▇ [¶ 9] Because the Legislature intended sections 1403 and 1405 to be complementary in some respects, but not in others (*see, e.g.,* section 1405(2)),[3] the correct interpretation of these two statutes when read together is not always clear.[4]

---

2. Subsection 253(1) provides: "The commissioner shall exercise the powers and perform the duties granted to the department and enforce the requirements of this Title and shall devote full time to the duties of the office." 20–A M.R.S.A. § 253(1) (1993).

3. Section 1405(2) begins: "The steps set forth in section 1403 for dissolution apply to the withdrawal of a member municipality from a school administrative district, except that . . ." and then sets out five points of departure

from section 1403. 20–A M.R.S.A. § 1405(2) (1993).

4. For example, there is an apparent conflict between the "plain meaning" of section 1405(5) (stating that the district *"may* negotiate with the withdrawal committee regarding an equitable division of the district's property between the district and the municipality . . . and transfer title of the property to the municipality *following withdrawal."* (emphasis added)) and the apparent dictate of section

There are ambiguities even within each statute as well.[5]

[¶ 10] Under these circumstances, the correct interpretation is one that reasonably reconciles the two statutes in light of their legislative purpose. The Commissioner's and MSAD 27's interpretation complies with the legislative purpose. The Commissioner is required to review the proposed terms of the agreement to ensure that it complies with the Section 1403(4)(A) standards and comports with his own "findings of whether the contents of the plan will provide for appropriate educational and related services to the students of the district and for the orderly transition of assets, governance, and other matters related to the district." 20–A M.R.S.A. § 1403(4)(B) (1993). With that as his mandate, his contention is logical that the students left behind in the MSAD, as well as those in the withdrawing towns, must be considered before any changes are approved, and that, therefore, the MSAD must be involved in the preparation of any withdrawal agreement. The term "agreement" necessarily involves two or more parties. To exclude MSAD 27 from the negotiations would violate the overall spirit of the two statutes. It would be absurd to ask the Towns' voters to approve an "agreement" that might never materialize; or to exclude the other five MSAD 27 municipalities from withdrawal discussions that affect their students. It would also be passing strange to interpret section 1405(5) as authorizing negotiations over property and assets after the Towns have voted to withdraw and after withdrawal has taken place. Therefore, the Towns' reliance on only certain subsections of section 1405 and their narrow interpretation of those subsections, in isolation from the context of sections 1403 and 1405 as a whole, contradicts the legislative intent.

[¶ 11] The Commissioner was well within his authority to withhold his approval of a draft agreement when it was not the product of negotiations between the Towns and the District. His interpretation deserves our deference, is in accord with the "plain language" of the statute and the "real purpose of the legislation," and avoids an "absurd, inconsistent, unreasonable, or illogical" result. Therefore, the court did not err in declaring that those statutes "do not require the Commissioner to set a date for a municipal election to act on a withdrawal agreement until he approves the agreement with the school district as those statutes provide." We need not decide, on this record, the extent to which the Commissioner might be involved should the parties reach an impasse.

The entry is:

Judgment affirmed.

---

1403(4)(A)(10) (stating that the agreement, which the Commissioner must approve *prior to* withdrawal, "*shall* provide for the disposition of real and personal property and other monetary assets." (emphasis added)). *See* 20–A M.R.S.A. §§ 1405(5) and 1403(4)(A)(10) (1993).

5. Even section 1405(5) standing alone is ambiguous. It provides in pertinent part: "Transfer of property. The district board of directors may negotiate with the withdrawal committee regarding an equitable division of the district's property between the district and the municipality represented by the committee and transfer title of the property to the municipality following withdrawal." 20–A M.R.S.A. § 1405(5) (1993). It is not entirely clear whether the phrase "following withdrawal" modifies both "may negotiate" and "transfer title," or only modifies "transfer title."