STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-11
DHM- KEN- 12/8/2004

BOSTON & MAINE
CORPORATION, *et al.*,

Petitioners

v.

STATE TAX ASSESSOR,

Respondent

**DECISION AND ORDER**

DEC 30 2004

This matter is before the court on cross-motions for summary judgment by petitioners and respondent. The action is initiated by a petition for review pursuant to the provisions of 36 M.R.S.A. § 151 and 5 M.R.S.A. § 11002. Venue is proper. 5 M.R.S.A. § 11002(1)(B). Petitioner Boston & Maine Corporation ("B&M") owns and operates a rail line between Plastow, New Hampshire, and Rigby Yard in South Portland, Maine. Petitioner Portland Terminal Company ("PTC") owns and operates a rail line from Rigby Yard to Congress Street in Portland, Maine.

This case concerns a dispute over a tax credit claimed by B&M and PTC on their 2002 Railroad Tax Returns filed with the State of Maine for improvements made to their railroad property in 1999, 2000 and 2001.

In July of 1998, petitioners entered into an agreement with the State of Maine to improve railroad tracks between Plaistow, New Hampshire and Portland, Maine, in order to extend Amtrak service to Maine ("The Agreement"). Funding for this project was provided by the State of Maine via the Northern New England Passenger Rail Authority.

At the center of the dispute is a disagreement over the intent of the Maine legislature in funding the Northern New England Passenger Rail Authority ("NNEPRA") in 1995 and creating the Maine Capital Tax credit in 1989. Improvements completed by petitioners' employees were reimbursed by NNEPRA. To the extent petitioners' improvements were completed by outside contractors, NNEPRA provided direct payment.

In April 2002, petitioners B&M and PTC filed Railroad Tax Returns that taken together claimed over $50,000,000 in capital expenditures under 31 M.R.S.A. § 2621-A(3)(B).[1] All of the money that went into the capital expenditures by petitioners came directly or indirectly from the NNEPRA fund. All parties agree that none of the funds expended by B&M or PTC ultimately came from freight or passenger fees or any other source of business operating revenue. Petitioners sought the 45% tax credit provided in 36 M.R.S.A. § 2621-A(3)(B) using all of the money expended through them or for them by NEEPRA in the years 1999 through 2001.

On June 3, 2002, the Director of Maine Sales, Fuel and Special Tax Division notified petitioners that neither of them "economically suffered" from these improvements and "since the associated costs were borne by the Authority," these amounts would not be allowable expenditures. The Director also noted that the amounts received from NNEPRA had not been recognized as income and therefore could not have been legitimately characterized as having been expended by petitioners.

---

[1] B&M claimed $43,799.981 and PTC claimed $6,870,399.

In a letter dated June 28, 2002, petitioners requested reconsideration of the Director's decision arguing that the source of the funding for capital improvements is irrelevant under the statute and averring that due to the workings of accrual method accounting, the funds received from NNEPRA did not begin appearing in the two corporations' books until January 1, 2002. Another letter to Maine Revenue Services from petitioners' counsel dated November 11, 2002, explain petitioners' defense of its right to a tax credit including discussion of Amtrak's determination that the rail lines at issue should be rehabilitated and legislative history of 23 M.R.S.A. § 8005(2).

On January 17, 2003 the Director of the Maine Revenue Services Appellate Division issued decisions pursuant to petitioners' request for reconsideration filed under 36 M.R.S.A. § 151 denying both petitioners' 2002 Maine Capital Tax credit. The Director relied on three considerations for this denial. First, the Director found that petitioners' had not expended their own funds, second, the Director found that all petitioners' had claimed expenditures from years previous to 2001 and finally the Director noted that petitioners had not claimed NNEPRA payments as gross transportation receipts until January of 2002. He ruled this issue not material as the Railroad Excise Tax is on the value of the railroad franchise only.

On February 18, 2003, petitioners timely filed for M.R. Civ. P. 80C review with this court. The State Tax Assessor filed a motion for summary judgment. Petitioners timely filed an opposition to the respondent State Tax Assessor's motion for summary judgment and filed a cross-motion for summary judgment.

Judicial review of decisions of the State Tax Assessor as governed by 36 M.R.S.A. § 151 "provides that the Superior Court 'shall conduct a de novo hearing and make a de novo determination of the merits of the case.'" *Foster v. State Tax Assessor*, 1998 ME 205, ¶ 7, 716 A.2d 1012, 1014; 36 M.R.S.A. § 15. The procedural posture of this case requires

that this court examine it pursuant to the standard of review appropriate to a motion for summary judgment.

Summary judgment is proper if the citations to the record found in the parties' Rule 56(h) statements demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Dickinson v. Clark,* 2001 ME 49, ¶ 4, 767 A.2d 303, 305. "A fact is material if it has the potential to affect the outcome of the case under governing law." *Levine v. R.B.K. Caly Corp.,* 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing *Burdzel v. Sobus,* 2000 ME 84, ¶ 6, 750 A.2d 573, 575). "The invocation of the summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine issue of fact exists. The Court cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial." *Searles v. Trustees of St. Joseph's College,* 1997 ME 128, ¶ 6, 695 A.2d 1206, 1209 (quoting *Tallwood Land & Dev. Co. v. Botka,* 352 A.2d 753, 755 (Me. 1976)). To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a prima facie case for each element of her cause of action. *See Fleming v. Gardner,* 658 A.2d 1074, 1076 (Me. 1995).

Since 1881 the State of Maine has imposed an annual excise tax on railroads operating in Maine. *Maine C. R. Co. v. Halperin,* 379 A.2d 980, 981 (Me. 1977). This tax is currently codified at 36 M.R.S.A. §§ 2623–2625.

> Every corporation, person or association operating any railroad in the State under lease or otherwise shall pay to the State Tax Assessor, for the use of the State, an annual excise tax for the privilege of exercising its franchises and the franchises of its leased roads in the State, which, with the tax provided for in section 561, is in place of all taxes upon the property of such railroad.

36 M.R.S.A. § 2623.

Under the provisions of 36 M.R.S.A. § 2624, the amount of tax due is based on gross *transportation* receipts ("GTR") compared with net railway operating income[2] with a with a percentage due in tax relative to the ratio of net railway operating income to GTR. For example, if net railway operating income does not exceed 10% of GTR the tax shall not exceed 3 ¼%. *Id.* If net railway operating income exceeds 25% of GTR, the tax shall be 5 ¼% of GTR.

The Railroad excise tax contains a provision stating:

> The tax shall be decreased by the amount by which 5 ¾% of operating investment exceeds net railway operating income but shall in no event be decreased below a minimum amount equal to ½ of 1% of gross transportation receipts.

*Id.*

Relevant to the situation of petitioner PTC, the statute provides that "[I]n the case of railroads operating not over 50 miles of road, the tax shall not exceed 1 ¾% % of the gross transportation receipts." *Id.* The Railroad Excise Tax may not be decreased below a minimum of one half of one percent of GTR. *Id.*

"'Maine capital tax credit" is a credit against the tax imposed by section 2624" created by the Maine legislature in 1989. 36 M.R.S.A. § 2621-A(3). Under this statute, a railroad is granted a credit against the amount owed subject to Maine Railroad Excise Tax "equal to 45% of the expenditures for a taxable year related to capital investments, improvements or renovations to a railroad's operations in this State." *Id.* at § 2621-A(3)(B).

Currently there is an absolute limit of $500,000.00 in tax credits available under this statute for all of the railroads in Maine in any single year. *Id.* at § 2621-A(3)(F). This $500,000 limit is shared pro rata among those railroads claiming the credit. *Id.* This

---

[2] This term is not defined in the statute and although used in case law, e.g., *Halperin,* is explicitly not defined.

paragraph contains a "sunset provision" effective Jul 1, 2005. *Id.* After July 1, 2005, as currently drafted, there will no limit on the size of the tax credit in any single year.

The NNEPRA was created in 1995 to carry out the directives of the "Passenger Rail Service Act." P.L. 1995, ch. 375, § 3. The authority is codified at 23 M.R.S.A. §§ 8111–8120.[3] Legislation directed the authority to "take all actions that are reasonably necessary to initiate, establish or reinitiate regularly scheduled passenger rail service between points within this State and points within and outside this State." 23 M.R.S.A § 8003(1). The authority was directed to "seek and use funds necessary for implementation of this chapter, in an amount not less than $40,000,000, exclusive of any interest or other debt service . . ." *Id.* at § 8005(2).

All of the work completed between 1999 and 2001 under the July 1998 agreement between NNEPRA and petitioners was paid for either directly or via reimbursement by NNEPRA. This amounted to a total of $43,799,980.63 for work on the B&M line and $6,870.399 for work on the PTC line.

The State Tax Assessor asserts that in accordance with the plain language of the relevant statute, petitioners are barred to claim on their 2002 Railroad Tax Return a Maine Capital Tax credit of 45%[4] pursuant to 36 M.R.S.A. § 2621-A for money spent on improvements to their railroads in 1999, 2000 and 2001. Citing section 2621-A(3)(B) ("[t]he credit shall be in an amount equal to 45% of the expenditures for a taxable year related to capital investments, improvements or renovations to a railroad's operations in this State.") respondent asserts that only a railroad actually incurring such expenditures is entitled to claim the credit.

---

[3] The Passenger Rail Service Act is at 23 M.R.S.A. §§ 8001-8012.

[4] Petitioners state that a total of $50,670.380 was expended pursuant to NNEPRA. Forty five percent of this amount is $22,801,671. *See,* 36 M.R.S.A. § 2621-A(3)(B).

Respondent points to no previous case law in Maine providing a definition for "expenditure" and there is no definition offered in section 2621-A. Instead, respondent relies on a "plain language" argument. *Foster v. State Tax Assessor,* 1998 ME 205, ¶ 7, 716 A.2d 1012, 1014 ("In the interpretation of a statute, we seek to effectuate the intent of the Legislature, which is ordinarily gleaned from the plain language of the statute.). Further, respondent offers interpretory guidance from a recent Law Court ruling that when "a statute provides a tax credit, the person seeking the credit must show that it is 'unmistakably within the spirit and intent of the statute.'" *Daimlerchrysler Servs. N. Am. v. State Tax Assessor,* 2003 ME 27, ¶ 7, 817 A.2d 862, 864, quoting *Foster,* 1998 ME 205, ¶ 8, 716 A.2d at 1015.

The Assessor maintains that only a taxpayer railroad actually incurring the expenditures contemplated in section 2621-A(3)(B) is entitled to the credit. As the railroads are the only entities cited in the relevant statutes, respondent argues, construing statutory language as authorizing expenditures by a third party to alleviate tax owed by the railroad is illogical and inconsistent with the excise tax scheme.

Petitioners directly state that they are entitled to claim a tax credit for expenditures made pursuant to the NNEPRA agreement regardless of the source of the funds and argue that their claim to the credit is "unmistakably within the spirit and intent of the statute." quoting, *Daimler Chrysler,* 2003 ME 27, ¶ 7, 817 A.2d at 864. The source of the funds for the improvements that petitioners made is not material, according to petitioners' reasoning. Petitioners argue that funds for improvements come from many different sources – passenger fares, investment proceeds, loans, etc. – and all that section 2621-A(3)(B) references is "expenditures" not their sources.

Petitioners argue that this court's objective when interpreting a statute in this type of situation is to give effect to the legislature's intent. "Our main objective in

statutory interpretation is to give effect to the Legislature's intent. . . To determine the intent of the Legislature, "we look first to the statute's plain meaning and, if there is ambiguity, we look beyond that language to the legislative history . . . ."" *Town of Eagle Lake v. Commissioner, Dept. of Education,* 2003 ME 37, ¶ 7, 818 A.2d 1034, 1037. Petitioners offer statements by a Representative from the floor debate characterizing the credit as "a mechanism by which we provide for investment in the state of Maine by the railroad industry being recognized in the railroad excise tax" that "is not a tax exemption . . . is not a credit against corporate income taxes . . . [and] has nothing to do with corporate income tax." Legis. Rec. H-1598 (June 20, 1989).

Respondent also cites legislative history including a Statement of Fact regarding the credit from the taxation committee. "This credit . . . provides the inducement for significant railroad investment in Maine." L.D. 565 (114th Legis. 1989).

These instances of legislative history are somewhat inconclusive in elucidating the interplay between 36 M.R.S.A. § 2621-A (Maine Capital Tax credit) and NNEPRA. The two bills were enacted six years apart and the funding provisions of NNEPRA were targeted at restoring one rail line for passenger service with all funding provided by the State. The legislative scheme behind the Maine Capital Tax was to try to revive a moribund rail industry in the State.[5]

The language of section 2621-A itself limits "[t]he total value of the credit authorized" to "$500,000 in any taxable year" with "the total credit filed for all railroads in any taxable year . . . exceed[ing] $500,000" prorated among the railroads filing. 36 M.R.S.A. § 2621-A(3)(F). Here, petitioners have requested a tax credit exceeding $22,000,000 and B&M included expenditures made on their behalf for work done on

---

[5] It is not outside the bounds of reason that the State of Maine wishes to credit petitioners for money spent on rail improvement regardless of how the funds entered their coffers.

their rail line in New Hampshire.[6] Even though any portion of the credit "may be carried forward to each of the 5 taxable years following the taxable year" that portion is still "subject to the limit imposed in [section F]. *Id.*[7]

Respondent argues that the method the petitioners used to claim expenses from the years 1999, 2000 and 2001 in their 2002 tax return, accrual accounting, is not relevant to the excise tax under consideration. He says, "The Railroad Excise Tax, however, is not an income tax, but a tax together with the tax provided in 36 M.R.S.A. § 561,[8] that is 'in place of all taxes upon the property of such railroad.' 36 M.R.S.A. § 2623. . . . The excise tax operates to measure and tax the value of the local franchise as a going concern." *Maine Central Railroad Co. v. Halperin,* 381 A.2d 8, 10 (Me. 1977).

The position of the parties is founded upon different theories of taxation. The State's argument is based upon the wording of the statute regardless of its purpose and the petitioners are arguing the purpose of the statute regardless of its language. It is clear from 36 M.R.S.A. § 2623 and *Maine Central Railroad Co. v. Halperin,* 381 A.2d 8 (Me. 1977) that the excise tax is a tax on the value of the franchise. There can be no doubt that to the extent that there have been improvements to the property of the petitioners, there is increase in the value of the franchise. This is true regardless of the source of funds creating those improvements. This is further exemplified under the concept of 36 M.R.S.A. § 2624 in which the use of gross transportation receipts in an interstate system, although undefined, are first applied against the total number of miles operated to obtain an average gross transportation receipts per mile. Furthermore, since the

---

[6] Petitioners aver that it has corrected this mistake by filing an amended 2002 Maine tax return.

[7] A complicating factor is that section F contains a sunset provision that removes the $500,000 limit in July of 2005. So that if this credit was granted, the carry forward might not be subject to the $500,000 limit.

[8] "The buildings of every railroad corporation . . ., whether within or without the located right-of-way, its lands and fixtures outside of its located right-of-way, and so much of its located right-of-way over which all railroad service has been abandoned, are subject to taxation in the places in which the same are situated, as other property is taxed therein, and shall be regarded as nonresident land." 36 M.R.S.A. § 561.

expenditures do not increase the value of the property, and therefore the value of the franchise, until the capital improvements are placed in use, accrual of expenses is not unreasonable.

In the final analysis, the petitioners' privilege of exercising their franchises in the State of Maine has been enhanced by $50 million. The State of Maine is entitled to the benefit of that increased valuation in the application of a railroad excise tax. This is clearly the plain language of 36 M.R.S.A. § 2623. This is realized by the inclusion in the gross transportation receipts of the petitioners the amounts received from the NNEPRA. Inasmuch as the railroad excise tax statutes do not require a specific accounting system but do assume that the basis will be for expenditures for the taxable year, the refusal on the part of the State Tax Assessor to accept the inclusion of the expenditures and the gross transportation receipts over the depreciated life of the improvements would appear to be proper. As a result, the court must find that the petitioners are entitled to the tax credit of 36 M.R.S.A. § 2621-A for capital improvements accomplished from the receipt of funds from the Northern New England Passenger Rail Authority but, in accordance with the statutory scheme of the railroad excise tax, must include these amounts in the gross transportation receipts of the taxable year received.

How does this court reconcile the obvious increase in value of the petitioners' franchise as the result of infusion of capital by a third party with the plain language of the Maine Capital Tax Credit Statute without reaching an illogical or absurd result? Simply stated, since the excise tax is obviously a replacement for local or state property taxation of the petitioners' road and the infusion of capital improvements to that road increases the value of the franchise regardless of the source of funding, it is clearly the legislative intent that the State of Maine realize the increase in value to that franchise through the excise tax. That increase in value should be recognized by the State of

Maine in the addition of the contributions to the gross transportation receipts. The court believes it is fair to assume that a business corporation injecting capital to improvements to its operating system would realize either increased gross receipts, fare revenues or increased profits, or both. Such a result increases the value of the franchise and, therefore, the amount of excise tax to which the State is entitled. Since the Maine Tax Credit as well as the NNEPRA contributions were created by the legislature to improve the railroad system, it is fair to assume that the legislature intended that the value of the railroad franchise would be increased as well as represented by increased gross receipts or net profits.

Considering that analysis, the failure of the petitioners to include the NNEPRA contribution in its gross transportation receipts for the years in which they were received, even though amounting to a net "wash," does not allow this court to give petitioners relief in its interpretation of the relevant statute.

The entry will be:

> Petitioners' motion for summary judgment is DENIED; respondent's motion for summary judgment is GRANTED; judgment for respondent State Tax Assessor.

Dated: December____ , 2004

Donald H. Marden
Justice, Superior Court

Date Filed __2/26/03__ __Kennebec__ Docket No. __AP03-11__
                                  County

Action __Petition for Review__
                    80C

# J. MARDEN

__Boston & Maine Corporation, et al__    vs.    __State Tax Assessor__

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Glen L. Porter, Esq.<br>P.O. Box 1210<br>80 Exchange Street<br>Bangor, Maine  04402-1210 | ~~Stanley W. Piecuch, AAG~~<br>6 State House Station<br>Augusta, Maine  04333-0006<br>Michael Miller, AAG |

| Date of Entry | |
|---|---|
| 2/18/03 | Petition for Review, filed. s/Porter, Esq. |
| 2/26/03 | Letter entering appearance, filed. s/Piecuch, AAG |
| 3/3/03 | Original Summons with return service made upon State Tax Assessor on 2/18/03. |
| 3/25/03 | Joint Motion for Order Specifying Future Course of Proceedings with Memorandum of Law, filed. s/Piecuch, AAG<br>Proposed Order, filed. |
| 3/27/03 | ORDER SPECIFYING FUTURE COURSE OF PROCEEDINGS, Marden, J.<br>(Discovery deadline is 9/26/03. Motions to be filed 30 days after close of discovery).<br>Copies mailed to attys of record. |
| 5/13/03 | Notification of Discovery Service, filed. s/Porter, Esq.<br>Petitioners' First Set of Interrogatories; and Petietioners' First Request for Production of Documents served on Stanley W. Piecuch, AAG on 5/12/03. |
| 6/10/03 | Notification of Discovery Service, filed. s/Piecuch, AAG<br>Assessor's Response to Petitioners' First Set of Interrogatories served on Glen L. Porter, Esq. on 6/9/03. |
| 8/25/03 | Notification of Discovery Service, filed. s/Piecuch, AAG<br>Assessor's First Set of Interrogatories Directed to Petitioners served on Glen L. Porter, Esq. on 8/21/03. |
| 10/17/03 | Notification of Discovery Service of Petitioner's Answers to First Set of Interrogatories and Petitioners' Response to First Request for Production of Documents served on Stanley Piecuch, AAG on 10/15/03, filed.  s/G. Porter Esq. |
| 10/22/03 | Assessor's Agreed-Upon Motion for Enlargement, filed. s/Piecuch, AAG |
| 10/22/03 | ORDER ON MOTION FOR ENLARGEMENT, Studstrup, J.<br>(All motions, except motions in limine of those affecting the conduct of the trial, shall be filed not later than January 26, 2004.)<br>Copies mailed to attys of record. |